# CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia,
ex rel. James S. Gilmore, III,
Attorney General

v.

Jerome Greenberg et al.

April 15, 1997

Case No. HE-12-3

BY JUDGE T. J. MARKOW

This case came before the court on March 26, 1997, for a bench trial on the Plaintiff's claims against the last remaining Defendant, Jerome Greenberg. The Court has considered the evidence presented, the arguments made, and the briefs filed. Its opinion follows.

The Commonwealth originally brought suit against Allstate Express Check Cashing, Inc. (Allstate). In that case, it was determined that Allstate's business practice of advancing cash against a customer's check to be held by Allstate until a future date constituted the making of loans. That case also found that the fees charged by Allstate for this service exceeded the limits imposed by the Virginia Consumer Finance Act. *Commonwealth v. Express Checking*, No. HD-44-1 (1995) (Circuit Court of the City of Richmond, Hughes, J., presiding) (applying Va. Code Ann. §§ 6.1-244 to 6.1-309). The VCFA allows the attorney general to seek restitution from the lender, on behalf of the borrowers, for such a violation of the law. Va. Code Ann. § 6.1-303(A)(2).

The Commonwealth then sued the three major principals in Allstate, individuals who were each a director, an officer and a shareholder, seeking to impose individual liability upon them. The claims against Loran Martin and Joe Lynch are no longer before this court. The remaining defendant, Jerome Greenberg, defends against these claims.

Plaintiff seeks to impose individual liability upon Greenberg on two theories: (1) the piercing of the corporate veil; and (2) "active" participation by the defendant in the commission of the wrongful conduct. The Court will examine each claim individually.

In Virginia, to impose personal liability on a shareholder of a corporation for the corporation's debts on the theory of "piercing the corporate veil," two elements must be shown. First, there must be a showing that the corporate entity was the alter ego, alias, stooge, or dummy of the individuals sought to be held personally liable. *Cheatle v. Rudd's Swimming Pool Supply Co., Inc.*, 234 Va. 207, 212 (1987). Second, there must be a showing that the corporation was used as a device or sham to disguise wrongs, obscure fraud, or conceal crime. *Id.* As one case stated the principle: there must be a showing that the individual "controlled or used the corporation to evade a personal obligation, to perpetrate fraud or crime, to commit an injustice, or to gain an unfair advantage." *O'Hazza v. Executive Credit Corp.*, 246 Va. 111, 115 (1993).

As it is unnecessary to this decision, the court makes no findings and will not discuss the alter ego requirement. The Court finds that the second element, i.e., the use of the corporation to disguise wrongs requirement, is not supported by the evidence. The evidence supports, as the previous ruling in the case against Allstate held, that the corporation did violate the law. The evidence does not, however, show that Greenberg incorporated the company for the purpose of disguising his wrongful actions and evading liability. Rather, like any other corporate stockholder, he sought to limit his liability, should the corporation lose money, to his initial investment. Lacking a showing that Greenberg was attempting to hide his misdeeds by creating an incorporated entity, as opposed to any other business form, the Court holds that the corporate veil should not be pierced. On this theory, the Court declines to impose personal liability on Greenberg.

The other theory of individual liability is based on the statement that "[a] corporation can act only through its officers and agents, and where the business itself involves a violation of the law, the correct rule is that all who participate in it are liable." *Crall v. Commonwealth*, 103 Va. 855, 859 (1905). Unlike the piercing the corporate veil theory, this theory of recovery seeks not to hold *shareholders* in a *sham* corporation personally liable, but *anyone personally participating* in breaking the law while conducting a corporation's

business. This requires personal "active" participation in the conduct of the corporation's affairs.

It does not require that the individual participate in every day-to-day decision. It is sufficient to show that the individual was aware of the actions of the corporation and knowingly approved of them. *Commonwealth v. Virginia Telemarketing, Inc.*, 15 Va. Cir. 489, 496 (1989). This does apply, contrary to the urging of the Defendant, in the civil context, as well as the criminal. *See, e.g., Stitt v. Nautilus Enterprises, Inc.*, 17 Va. Cir. 150, 152 (1989); *Virginia Telemarketing*, 15 Va. Cir. at 496.

The Defendant argues that this theory of recovery cannot be used in a case arising under the VCFA. He points to the language of the statute, which allows restitution by the borrowers against the "lender." Va. Code Ann. §§ 6.1-303(A)(2) and 6.1-308(B). He argues that it was the corporation, not himself, which was the lender involved. He allows that the piercing the veil theory would apply, if supported, as, through the mechanism of piercing, he would stand in the shoes of the corporation, making him the lender. He argues that the same operation of law would not occur under the active participation theory. As such, he concludes, even if he actively participated, he was not the lender, and therefore, the statute does not afford recovery from him.

This argument misses the point of the theory of recovery. The liability has been imposed against the corporation, according to the statute, as a result of the illegal acts of the corporation. Because it was actually individuals who committed the illegal acts, the individuals can be held responsible. Mr. Greenberg is to be held personally liable, not because he was the "lender," but because he was a responsible actor within the corporation which was the "lender." The statute imposes the liability on the corporation as lender and the doctrine of active participation extends that liability to the individuals involved.

Defendant also argues that his participation in the corporation was no more than that of any conscientious investor in any corporation. The Court cannot agree. The corporation here made illegal loans. Mr. Greenberg, personally, was involved in determining the corporation's function and purpose, he was actively involved and approved the methods, encouraged a policy of obscuring this fact by requiring that the employees refrain from using words like "loan" and "interest." He would go to the stores, on occasion, and would quiz the employees to make sure they were not using such words; he was the financial resource necessary to permit the business to operate. A very active investor when the state began to file lawsuits against other such businesses, Mr. Greenberg asked Mr. Martin to investigate what others were doing to avoid legal problems. They discovered a gift certificate plan, which they believed

would protect them from legal liability. It did not. In the meantime, Mr. Greenberg personally, and in consultation with the other principals, was involved in the decision to implement the gift certificate program. Greenberg may not have been active in every aspect of the corporation, but he was certainly active in trying to hide the illegal acts of the corporation. The Court finds that Mr. Greenberg was, at the least, aware of the actions of the corporation and knowingly approved of them.

The Court also disagrees with Mr. Greenberg's argument that he did not know that the acts taken by the business were illegal. The question is not his appreciation of the legal status of his operation. What is important is his active involvement in organizing, encouraging, and enabling this business to flourish. Scienter is not an issue. The fact is, the corporation did break the law, and Mr. Greenberg helped it to do so, having actively participated in the actions and the hiding of those actions. Mr. Greenberg may have believed that he was on the correct side of the line drawn by the General Assembly as to what is legal and what is not, but he was incorrect in his belief. He is liable for damages resulting from *his* conduct.